STEHR AUTO SHEET METAL WORKS v. PACHOLIK et al.*

No. 4578.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

George J. Ginsberg, of Alexandria, for appellant.

J. B. Nachman, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff, a copartnership, instituted this suit against the widow and heirs of Frank Hromadka, deceased, to recover $215 alleged to be due for "goods sold and delivered" and for "services rendered" to the deceased while operating a business under the style and trade-name of "Auto Sheet Metal Works" in the city of Alexandria, La., as shown by itemized statement attached to the petition. The account attached is at variance with the allegations of the petition. It contains three distinct charges of indebtedness:

| | | |
|---|---|---|
| Rebuild Plymouth | $180.00 | |
| Cost of Court | 10.00 | |
| Attorney's fee | 25.00 | ...$215.00 |

No objection has been raised as to the variance. Evidence was introduced to support the account sued on, broadening the pleadings.

To clarify the situation at this time it is well to here state that Frank Hromadka died on January 13, 1929, whereas $180 of the indebtedness sued for herein arose in November, following, while his widow was operating the Auto Sheet Metal Works' business, and the balance of the amount sued for was advanced for defendant's account subsequent to January, 1930. Therefore, if there is liability to plaintiff for any part of said indebtedness, the children of the deceased Frank Hromadka cannot be held for same. We shall hereafter refer to the widow of the deceased, now wife of one Pacholik, as the defendant in the case.

Defendant denies owing plaintiff any amount. She alleges, and it is established, that about one year after her husband's death, she and the two Stehrs, members of plaintiff firm, reached an agreement to form a corporation to conduct the two lines of business they had theretofore engaged in; that the corporation was formed and the tangible property and equipment of the two old firms was transferred to the corporation. She further alleges that on or about February 25, 1930, and "before the formation of the corporation," she reached a settlement with the Stehrs, "as related to all existing indebtedness and settled said amount (that sued for) in full and received a receipt from J. J. Stehr" to that effect, and further, "that at the time of said transfer and organization it was distinctly understood that all indebtedness existing between the parties had been settled, all as will be more fully shown on trial of this case."

The new corporation, organized February 10, 1930, it is alleged and established, was unsuccessful, and was by mutual consent dissolved, each side retaining the property transferred by them, respectively, to it at time of organization.

Plaintiff's suit was dismissed and its demand rejected. This appeal is prosecuted by it.

During the life of Frank Hromadka he carried an account with plaintiff firm and purchased material from it, for use in his repair work, which he did not carry in stock himself, and would send over to it automobiles, etc., intrusted to him for repair and reconditioning which required a character of work and repair he was not in a position to perform. After his death his widow, the defendant, undertook to operate the business, with the assistance of her older son, along the same lines it had been previously operated. This was done until formation of the corporation above mentioned. In November, 1929, one J. M. McKenzie, Jr., brought to defendant's place of business a Plymouth car, badly damaged from fire, and authorized that it be reconditioned. It was transferred to plaintiff's business for first repairs and when

this had been done it was returned to defendant. Plaintiff charged defendant with the amount of repairs done by it, $180. Defendant charged $64 for the work done by her. The repaired car remained in defendant's possession and was so held when the corporation was formed.

On February 17, 1930, defendant, at the suggestion of J. J. Stehr, of plaintiff firm, instituted suit against McKenzie for the repair bills on his car, $244. The record does not disclose the course this suit took, but it does appear that it was barren of results so far as collecting from McKenzie. Stehr advanced the court costs incident to filing this suit and paid the fee of the counsel who represented plaintiff therein, $25. These amounts were charged to defendant and with the repair bill make up the amount herein sued for. Plaintiff herein was materially interested in the success of the suit against McKenzie. Its interest was about three times as great as that of defendant, from a pecuniary standpoint.

The itemized account in the record shows that to January 1, 1930, defendant was due plaintiff $488.33, and that during the months of January and February this amount was augmented by $80.75, making a total, to about the time the corporation was formed, of $569.08. This itemized account shows two credits, viz.: $34.75 and $354.33, leaving a balance due of $180. The receipt mentioned in defendant's answer and relied on by her as establishing payment or settlement of the entire account due by her to plaintiff is in the following words and figures:

"Feby. 25, 1930.

| | | |
|---|---|---|
| | $488.33 | (Note: This was the total of the a/c to 1/1/30). |
| Less | 185.00 | (Note: This should have been $180.00). |
| | 303.33 | |
| Jan. 8 – | 16.00 | |
| Jan.23 – | 11.50 | |
| Jan.28 – | 20.75 | |
| Feb.12 – | 35.00 | |
| Feb.14 – | 2.50 | |
| | 389.08 | |
| Stehr acct. | 34.75 | |
| Total – | 354.33 | Paid in Full." |

This receipt is not signed by any one. J. J. Stehr denies he wrote it, or knows anything about it. Defendant is positive he did construct it and handed it to her. Whether he did or not has no decisive bearing upon the issue of payment. It is certain that whoever wrote the figures and made the deductions appearing in the receipt had plaintiff's books before him, or a true copy of the account against defendant. There are minor variances between some of the debit items of the itemized account and the corresponding charges in January and February on the receipt but the totals of debits and credits, and balance shown, are the same.

It is not now seriously questioned, and the record establishes to our satisfaction, that the incorporation of the businesses conducted by plaintiff and defendant did not involve or affect the ownership of their bills and accounts receivable; that each side retained its own accounts unaffected by the transfer of their equipment to the new company.

Defendant, in her answer, alleges that before the corporation was formed she and plaintiff reached an agreement whereby the account due by her to it was settled in full, and in the same answer alleges that at the time of the organization of the corporation and the transfer to it of the equipment of the Auto Sheet Metal Works, "it was distinctly understood that all indebtedness" between them had been canceled. In her testimony she states that the settlement between her and plaintiff took place after the transfer to the corporation; and further on, when interrogated touching the significance of "Less $185.00" (should have been $180.00) in the above quoted receipt, she said: "I can't tell you; I don't know no more."

Then she was asked this leading question:

"Q. Was that payment there made before this last payment of three hundred and fifty four dollars and thirty three cents? This payment was made first, wasn't it?"

To which she answered: "Yes." And further:

"Q. And that is why it was written in the account in that way? A. Yes, sir.

"Q. That left a total then of $354.33, that correct? A. Yes, sir. * * *

"Q. Did you pay Mr. Stehr that amount in cash? A. I don't know; I can't tell you whether it was cash or check."

In the beginning of her defense to this suit defendant did not contend that she paid any part of the account due to plaintiff in cash or by check, but that the account was settled as a concomitant of the agreements resulting in the merging of the two firms into a corporation; that the debt was canceled by agreement as an incident to the formation of the corporation. Now she says that she paid the $354.33 either in cash or by check, and that the $180 was paid before the $354.33 was. These contradictions are irreconcilable.

J. J. Stehr testified that defendant paid the $354.33 on February 25, 1930, date of the receipt, and that his brother, Julius, then a member of his firm, acted as bookkeeper of the firm and attended to most of its clerical work, and while he did not write the receipt, he construed it as an acknowledgment of payment of the balance of $354.33, arrived

at after giving defendant credit for the $34.75 his firm was due her and deleting from the account the debit of $180, which was then in litigation with McKenzie; and this is our interpretation of that instrument.

He was asked this question:

"Did you ever have a settlement of account with the now Mrs. Pacholik, then Mrs. Hromadka?"

To which he answered:

"I had a settlement of account to the effect of $354.33 but this still leaving the $180.00 hanging over, which she asked me not to include in that account because at that time we still were"—(interrupted).

The answer was not completed as defendant's counsel objected and was sustained by the court. This answer to the time the witness was interrupted was clearly admissible. Any statement made by defendant disclosing her reason for not desiring that the $180 be included in the settlement would certainly have material bearing upon the questions: (1) Whether or not it had been previously paid, and (2) why it was deducted from the receipt relied on by defendant.

We conclude, and in this we are fairly well supported by evidence in the case, that the reason the $180 was eliminated from the settlement on February 25th was simply because a suit was then pending against McKenzie to collect what he owed for repairs to the car and all concerned were hopeful of realizing something from this effort; and, in addition to this, the car was in defendant's possession as security for the account.

■■ A plea of payment admits correctness of and original liability for the obligation sued on. Such a plea carries with it the burden of establishing its correctness. (C. C. art. 2232). 5 La. Digest 890; Florsheim v. Porter-Wynn Undertaking Co., 11 La. App. 435, 123 So. 515. Defendant has not discharged that burden. On the contrary, the preponderance of the evidence clearly establishes that she is in error in her contention that the $180 has been paid by her, or remitted by plaintiff.

■ Plaintiff, in its solicitude about the McKenzie account, had its own counsel, a reputable member of the Alexandria bar, institute suit against McKenzie, and paid the fee of this attorney and the advance court costs. The evidence does not disclose that defendant had any knowledge of the institution of this suit, but undoubtedly she did. Her relations, and those of her deceased husband, with plaintiff had been uniformly pleasant. She does not appear to have had much business experience. Plaintiff evinced an interest in her welfare and a desire to help her. It was doubtless from the promptings of this feeling, coupled with its own personal inter-

est in the success of the suit, that plaintiff urged that it be brought and advanced the money necessary for that purpose. Be this as it may, there is no evidence in the record to show that defendant authorized plaintiff to pay the court costs or attorney's fee for her account. She was not interrogated at all about the McKenzie suit, and Mr. Stehr does not say that she requested or authorized him to make these outlays for her. She may have done so, but the record does not contain any proof of such being done. As to these two amounts charged to defendant there will be nonsuit.

For the reasons herein assigned, the judgment appealed from is hereby annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff have and recover judgment herein against defendant, Mrs. Jennie Hromadka Pacholik, for $180 with legal interest from judicial demand, viz., February 3, 1932, until paid; in all other respects plaintiff's demand is rejected and its suit dismissed as in case of nonsuit. All costs of court are assessed against defendant.